STATE, *ex rel.*, RANGER REALTY CO. v. J. N. LUMMUS, JR., *Tax Assessor, et al.*

149 So. 650.
Opinion Filed August 10, 1933.

*Hall & English,* for Relator;

*Shutts & Bowen, Stapp, Gourley, Vining & Ward, Bart A. Riley* and *Hudson & Cason,* for Respondents.

DAVIS, C. J.—This is a proceeding in mandamus brought by the relator, the purchaser and owner of a certain tax certificate issued by the Tax Collector of Dade County,

Florida, pursuant to a tax sale held in that county during the year 1928, for delinquent taxes for the year 1927. The object of the writ is to require the respondents, Tax Assessor, Tax Collector, Clerk of the Circuit Court and publisher of the "Miami Herald" in which the tax sale notice apeared, to correct certain alleged irregularities alleged to have occurred in connection with the assessment and sale upon which the relator's tax certificate was issued, but which relator contends are not fatal to the validity of the certificate and are now subject to correction *"nunc pro tunc"* under Section 1 of Chapter 10040, Acts of 1925, or Chapter 14572, Acts of 1929, Laws of Florida, which provide for the correction of irregularities in connection with tax proceedings, and further provide that the proceedings "when so corrected" by the officer or party responsible for the original misprision, "shall be construed as valid *ab initio*" and shall in no way "affect any process provided by law for the enforcement of the collection" of any tax involved.

The errors which the relator seeks to have thus corrected by the respondent officers and newspaper publisher, may be summarized as follows: (1) That the tax assessor correct the 1927 tax roll so as to show opposite the description of the taxed land involved in this case, the *aggregate* amount of taxes assessed against said land and that he also enter opposite the description of the land on the tax roll the word "unknown" where a blank now appears in the column showing the name of the owner,—also that the assessor enter on the assessment page in its appropriate place under the description of the individual parcel of land as shown on the tax roll, the proper plat book and page to which such description refers; (2) that the tax collector correct the tax certificate that has been issued by him, by signing his name in the appropriate place therefor as required by law,

instead of using a rubber stamp for that purpose as he had done in issuing the certificate; (3) that the clerk of the circuit court shall file in his office a copy of the newspaper containing publication of the notice of tax sale for the year 1927 which covered the land involved in relator's certificate,—a requirement of the tax law under which the assessment and sale were had; (4) that the respondent, Frank B. Shutts, publisher of the officially designated newspaper (The Miami Herald) in which the tax sale notice for the tax sale held in 1928 was published, caused to be filed an affidavit of the publication, if in fact such publication was made, showing that the tax sale notice was duly published and the dates on which same was duly published as required by law.

The respondent tax assessor refuses to comply with the alternative writ of mandamus on the ground that the tax rolls which the writ requires him to correct, are no longer in his custody, but have been turned over to the tax collector as provided by law. He does not say that even though the rolls are out of his hands, that he is denied access to them for the purpose of complying with the alternative writ. The effect of the statutes is to impose upon the tax assessor a continuing duty to prepare according to law a legal tax roll, and if through oversight, mistake or inadvertance he has failed to do so, the statute itself affords ample power and authority for the tax assessor to correct his mistake in the preparation of the roll by forthwith making the necessary changes and amendments of the roll to make the same conform to the "form of things" required by the tax laws, and the effect of the statute is to impose upon the officer having the actual custody of the tax roll requiring correction, the duty to permit access to it by the tax assessor in order that the tax assessor may do what the

law requires him to do so as to show a regular and valid record of his assessment. The answer of the assessor in this case failing to allege that he is denied access to the books required to be corrected, is therefore not sufficient to justify his refusal to act in accordance with the mandatory duty imposed upon him by law.

The respondent tax collector defends against the commands of the writ with respect to him, by alleging that all the omissions complained of as having occurred on his part have been cured by Chapter 14572, Acts of 1929, which validated defective assessments, sales and certificates, so as to make the specific personal correction of same by the defaulting officer unnecessary. Assuming the contention of the tax collector in this regard ·to be true, it does not follow that relator, as the holder of a tax certificate based upon proceedings which are defective in form, may not be entitled to have the record of the antecedent proceedings made perfect according to the exact letter of the law, therefore· the answer of the tax collector constitutes no good ground why the correction prayed for should not be made.

The respondent clerk of the circuit court makes the same defense as the tax collector, and further sets up that he has been enjoined by the circuit court from issuing a tax deed based on the certificate with respect to which the corrections are sought by relator. The issuance of an injunction to prevent the clerk from executing a tax deed based upon the defective certificate does not supersede the requirement of the statute that the responsible officers shall make all necessary corrections of the record to show a due and sufficient legal tax proceeding. *Non constat* the court may have enjoined the issuance of the tax deed so that the record could be made perfect and the owner's time for redemption from the defective tax sale extended, until the

proper basis for the issuance of a tax deed was made to appear through the action of the responsible officers in making appear on the tax rolls those things which were actually done, but as to which the books and records of the officers are an imperfect record of the facts. So the answer of the clerk of the circuit court constitutes no sufficient defense against the commands of the alternative writ in the particulars specified against him.

The respondent, Frank B. Shutts, newspaper publisher of the officially designated newspaper appointed to carry the 1928 notice of the tax sale, returns in defense to the writ that one, G. V. Harper, the business manager of the Miami Herald, of which he is the publisher, made and filed the affidavit of publication required by law to be made and filed by the publisher of the tax sale notice, and asserts that the notice as already made and filed on his behalf by the official in charge of the newspaper plant who was at the time possessed of actual knowledge of the fact and dates of publication, is a sufficient compliance with the law and that the making and filing of another affidavit of publication is wholly unnecessary under the law. The affidavit as filed, made by Frank B. Shutts by G. V. Harper, business manager of the Miami Herald, shows that the tax sale notice was actually published together with the several dates of the weekly publications thereof. The affidavit already on file is sufficient evidence upon which the publisher of the paper can predicate an amended affidavit of his own, so as to supply the omission complained of, and since the statute requires all officers and others who assume to discharge duties in accordance with the tax laws to make corrections or omissions and irregularities when called on, we deem the answer of the respondent Shutts insufficient to constitute a ground for his refusal to make an amended

affidavit in accordance with law, predicated upon the affidavit already on file through the business manager of his newspaper.

The statutes require a proper listing of taxable lands, proper descriptions of same on the tax rolls, proper statements of valuations and proper computations of the taxes to be collected. They also require other detailed steps to be taken by the responsible tax officers designed, as the statute says, "for the orderly arrangement of records and procedure of tax officers in enforcing the revenue laws." The statute in this particular is nothing more than a Legislature act declaratory of the rule of law that would apply if there were no statute, since the jurisdictional notice to the tax payer that his land is about to be taken from him for his tax delinquency is, under the present tax system we have in this State, that which is required to be given by publication as a condition precedent to the issuance of a tax deed by the Clerk of the Circuit Court. Notice of the tax sale itself is simply a statutory regulation of the subject. It is designed more to produce buyers at the sale for the benefit of the State's revenues, than it is to protect any right of the delinquent tax payer, since the delinquent tax payer can lose nothing through the mere issuance of a tax sale certificate on his land. This is so, because the tax sale certificate after issuance must be held for at least two years, during which time the tax payer has open to him all the processes of the courts by which to challenge its validity if invalid, as well as the opportunity to redeem his land from it, if valid.

The effect of the statutes of this State authorizing, and indeed requiring, tax officials to correct errors in procedure and errors in their records, with reference to matters leading up to the issuance of tax sale certificates, is in legal

substance nothing more than the exercise of the same power that the Legislature frequently exercised in electing to reassess and resell taxable lands for a prior omitted tax,— a procedure which in this State is expressly authorized to be pursued when taxable property has been entirely omitted from any attempt to tax it all. Section 925 C. G. L. The Legislature has ample power to thus provide for the correction and validation of defective tax proceedings so as to give validity and effective operation to the system which the State has provided for the raising of revenue, as well as to carry out the constitutional mandate that none shall escape from his fair share of taxation through design nor neglect of tax officials. People v. Goldtree, 44 Cal. 323; Jacksonville v. Basnett, 20 Fla. 525.

In the last cited case it was pointed out by the Court that the Legislature had power, through validating, or providing for the validation of defective tax proceedings (not wholly void because of a lack of power to collect the tax at all under any circumstances) to require collection from a resisting tax payer of the same taxes which other willing tax payers had already paid under exactly the same kind of circumstances, thereby insuring the effectiveness of the very best method to secure the uniformity and equality required by the Constitution in the laying and collection of *ad valorem* taxes on property. Jacksonville v. Basnett, *supra,* 20 Fla. text 530, 532.

In the present case, it is shown that no tax deed has yet been issued, so the delinquent tax payer cannot be prejudiced by the making of the amendments to the tax proceedings here sought. The statutes themselves fix the lien of the tax as of the first day of January of the tax year. Subsequent proceedings provided in the statute are designed simply to set up an orderly way for determining and

making a record of the proper *amount* of taxes to be charged against the subject, for which the lien previously created shall continue until discharged through payment. The duty to have legal tax proceedings constitutes a continuing duty resting on taxing officials, which by mandamus they may be required to perform. And when performed, these duties subsequently discharged, perfect the proceedings *ab initio* and render valid and enforceable tax certificates based thereon, subject to the provisions of the law that before the tax certificates as thus validated can be enforced by issuance of a tax deed, proper new notices and advertisements must be given before the issuance of any such tax deed thereon.

The motion to quash the alternative writ of mandamus is overruled. The several answers of the respondents are held insufficient. Peremptory writ of mandamus is ordered to issue.

Davis, C. J., and Whitfield, Terrell and Buford, J. J., concur.

Brown, J., dissents.

Brown, J. (dissenting).—My only point of dissent is as to the sufficiency of the answer of publisher Frank B. Shutts. I am of the opinion that the affidavit of publication of the tax sale notice, as made, complied with the intent of the statute, and hence the answer of the respondent publisher should be held sufficient, and the writ denied as to him.