### SUCRO v. WORTHINGTON et al.
### SAME v. MARTIN et al.
### Nos. 4427, 4428.

Circuit Court of Appeals, Fourth Circuit.
June 12, 1939.

M. B. Simpson, of Elizabeth City, N. C. (R. Clarence Dozier, of Elizabeth City, N. C., on the brief), for appellant.

W. D. Pruden, of Edenton, N. C., and J. Kenyon Wilson, of Elizabeth City, N. C. (Worth & Horner, of Elizabeth City, N. C., on the brief), for appellees.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

PARKER, Circuit Judge.

These are appeals in two actions instituted to try title to land. From verdict and judgment in favor of the defendants in each case, the plaintiff has appealed. Plaintiff is the same person who was plaintiff and appellee in the recent case of Peterson et al. v. Sucro, 4 Cir., 101 F.2d 282. In both of the cases at bar she relied upon the same title held good by this court in the Peterson case. Defendants claimed different portions of the land covered by the Greenleaf grant, under which plaintiff claimed, and relied upon grants to Peter Baum as invalidating the Greenleaf grant. They relied also upon adverse possession. The plaintiff's sole contention in each appeal is that the evidence relied upon by defendants was legally insufficient and that verdict should have been directed in her favor, as was done in the Peterson case, supra, affirmed by the court.

In so far as the Peter Baum grants are concerned, we find nothing in the records in these cases to distinguish them from the Peterson case; and what is said in the opinion in that case as to the invalidity of those grants and the attempted location thereof is controlling here and need not be repeated.

The only remaining question which we need consider is as to the sufficiency of the evidence relied upon by the defendants in the Worthington case, No. 4427, to establish adverse possession, as no contention is made before us that there was sufficient evidence of adverse possession in No. 4428. The deeds under which defendants claim in No. 4427 embrace a tract of one hundred and fifty acres of land, but only a few acres of this fall within the boundaries of the grant under which plaintiff claims. Since plaintiff is claiming under the superior title, we may ignore evidence as to acts of possession by defendants outside the lappage; for the rule is well settled that constructive possession of one claiming under color of title, which in ordinary cases extends to the boundaries of the deed under which he claims, does not extend to land embraced within a lappage of which the claimant is not in actual possession and is covered by superior title in his adversary. As said by the Supreme Court of North Carolina in Georgia-Carolina Land & Timber Co. v. Potter, 189 N.C. 56, 127 S.E. 343, 346, "to mature a title under the junior grant, there must be shown adverse and exclusive possession of the lappage, or the law will presume possession to be in the true owner as to all that portion of the lappage not actually occupied by the junior claimant." The reason for this rule, as pointed out in Boomer v. Gibbs, 114 N.C. 76, 19 S.E. 226, is that the claimant under color does not oust the claimant under the superior title and subject himself to ejectment at the suit of the latter until he actually enters upon the lappage. See also McLean v. Smith, 106 N.C. 172, 11 S.E. 184. We may ignore also evidence as to possession of the lots upon which the Nixon and Winborne cottages were built, since adverse possession by a grantee to whom a part of a tract of land is conveyed does not ordinarily inure to the benefit of the grantor as to the remainder (2 C.J.S. Adverse Possession, § 39, page 552), and also because the grantees obtained quitclaim deeds from plaintiff's predecessor in title.

As to the remainder of the lappage, there was evidence not only that defendants were claiming same under deeds which constituted color of title and that they had paid the taxes thereon, but also that more than seven years before the institution of the action they had laid out and platted streets through the property, had divided it into residential lots, had marked the corners of the lots, had placed signs on the property offering it for sale, and, since that time, had continued to offer it for sale and had maintained

the markers upon it. The property consisted of sandy beach, not susceptible of cultivation or other use except as sites for beach cottages; and we think that the acts relied on, if established, constituted such exercise of dominion over the property as was sufficient to subject the claimant to an action of ejectment and to ripen title by adverse possession if accompanied by the other requisite elements.

We have not overlooked the case of Fuller v. Elizabeth City, 118 N.C. 25, 23 S.E. 922; but that case merely holds that paying taxes on land and offering it for sale is not sufficient to ripen title by adverse possession. Here we have much more than that. The dividing of the land into lots, the marking of the lots, the putting up of advertisements offering them for sale, was "flying the flag" of ownership over the property. It was the unqualified assertion of dominion over it, and dominion of such character as to put the true owner on notice of the adverse claim. We see no reason why it should not be given as much effect as planting crops, gathering firewood, building fences, or doing a dozen other things which have been held by the courts to constitute evidence of adverse possession. The rule in North Carolina is thus stated by the late Judge Walker, speaking for the Supreme Court in Patrick v. Jefferson Standard Life Ins. Co., 176 N.C. 660, 97 S.E. 657, 659: "Where there is such use and occupation of land as from its nature and character it is capable of, and it is dealt with in such a way as to indicate that the occupier is asserting the right of ownership over it, in opposition to the world, or to the true owner, and this is done openly and notoriously under a claim of right, and under known and visible boundaries, or color of title defining its boundaries, it is such adverse possession as, if continued for the statutory period—7 years under color and 20 years without color—will ripen the title to land, if the state has parted with or lost its right and title to the same. It does not in the law mean that the person must have his feet on every square foot of ground before it can be said that he is in possession. It may be established by inclosure, by the erection of buildings or other improvements, by cultivation, or, in fact, by any use of it that clearly indicates the appropriation and actual occupancy of a person claiming to hold it."

While the precise questions here involved seem not to have been decided by the Supreme Court of North Carolina, it has been held in other jurisdictions that platting lands and laying them off into town lots for purposes of sale are acts of ownership constituting adverse possession. Ben-Jay Inv. Co. v. Stillman, 114 Fla. 703, 154 So. 829; Ross v. Houston Oil Fields Ass'n, Tex.Civ.App., 88 S.W.2d 586, 594. See also Cashion v. Meredith, 333 Mo. 970, 64 S.W.2d 670, 673. Such acts certainly evidence the exercise of dominion quite as clearly as the building of a fence. As said by Judge Terrell, speaking for the Supreme Court of Florida in the case of Ben-Jay Inv. Co. v. Stillman, supra: "There is no general rule prescribing the particular acts of ownership which constitute adverse possession, but in the light of the purpose for which it is done, it certainly could not be questioned that platting and laying off into town lots for the purpose of sale is one of them."

It follows that in No. 4427, plaintiff was entitled to a directed verdict on the first issue, relating to the Peter Baum grants, but not as to the second issue, which involved the question of adverse possession and which was not passed upon by the jury. In No. 4428, plaintiff was entitled to a directed verdict on both issues, as there is no contention before us that there was sufficient evidence of adverse possession to ripen title in defendants. In both cases, therefore, the judgments appealed from will be reversed and the causes remanded for a new trial.

No. 4427, Reversed.

No. 4428, Reversed.